IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES LIABILITY<br>INSURANCE COMPANY | **PLAINTIFF** |
| v. | Civil Action No. 1:10cv175-LG-RHW |
| GOLDIN METALS, INC.; GOLDIN<br>INC.; GOLDIN INDUSTRIES, INC.;<br>JACK GOLDIN; MARTIN GOLDIN;<br>ALAN H. GOLDIN; and<br>STEVEN L. GOLDIN | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' MOTION FOR RULE 56(d) RELIEF**

**BEFORE THE COURT** is the Motion for Partial Summary Judgment on Duty to Defend [35] filed by United States Liability Insurance Company (USLIC) and the Motion for Rule 56(d) Relief [63] filed by Goldin Metals, Inc., Goldin Inc., Goldin Industries, Inc., Jack Goldin, Martin Goldin, Alan H. Goldin, and Steven L. Goldin (hereinafter collectively referred to as "the Goldin defendants"). Both Motions have been fully briefed by the parties. Upon reviewing the submissions of the parties and the applicable law, the Court finds that both Motions should be denied.

**FACTS**

The Goldin defendants and others were sued in the United States District Court for the Northern District of Georgia, Atlanta Division, by NCI Group, Inc., d/b/a Metal Coaters of Georgia and d/b/a Metal Coaters of Mississippi.[1]  According to the

---

[1] The NCI case is styled *NCI Group, Inc., et al. v. Cannon Services, Inc., et al.*, 1:09cv441-BBM.

allegations in the Amended Complaint, NCI treats, coats, and paints steel coils which are manufactured by its clients. (Ex. 1 to Pl.'s Mot. at 7). Goldin is one of NCI's clients. Coils are sent to NCI where they are processed, wrapped in plastic packaging and designated with a label bearing the Metal Coaters' trademark. The Metal Coaters' trademark certifies that the treated coils are prime material. (*Id.*) NCI alleges that the Goldin employees paid kick-backs to a high-ranking employee at NCI. In exchange for these kick-backs the NCI employee charged Goldin below-market prices for processing Goldin's coils. In addition, the NCI employee allegedly permitted Goldin to submit sub-par coils for coating. These inferior coils were processed, coated and packaged with the Metal Coaters' trademark. Once the coils were returned, Goldin was able to market the inferior coils as prime material.(*Id.* at 17-19). NCI alleges that the Goldin defendants profited from this scheme and caused significant losses to NCI. (*Id.* at 20). The Amended Complaint further alleges that the Goldin defendants knew that the invoices and charges they received from the NCI employee were "fraudulently below-market value," that their coils were fraudulently marked with a Metal Coaters trademark, and that the profits they received from the scheme were derived from unlawful means. (*Id.* at 23-25). NCI has filed the following claims against the Goldin defendants: fraud, conversion, tortious interference with contractual or business relations, negligence, violations of the Racketeering Influenced Corrupt Organizations Act, and violations of the Georgia Racketeer Influenced and Corrupt Organizations Act.

USLIC issued a claims-made Corporate Directors and Officers Liability policy to the Goldin defendants for the period of July 31, 2008 through July 31, 2009. (Ex.

2 to Pl.'s Mot. at 1). The policy provides insurance for "wrongful acts" arising solely out of an insured's duties on behalf of the organization. (*Id.*) On August 27, 2009, USLIC sent a reservation of rights letter to the Goldin defendants, in which it agreed to provide a defense to the Goldin defendants under a full reservation of rights. (Ex. 3 to Pl.'s Mot.) The letter stated, "Although there are covered and uncovered counts in the complaint, United States Liability will provide a full defense at this time to [the Goldin defendants]." (*Id.* at 6). The reservation of rights letter failed to give the Goldin defendants notice that they are entitled to select independent counsel at the expense of USLIC, as required by Mississippi law, but it provided the notice in a subsequent letter dated September 3, 2009, and the Goldin defendants have always been represented by independent counsel. (Ex. K to Defs.' Resp.) USLIC has not paid any of the defense costs incurred by the Goldin defendants' independent counsel, due to a dispute among the parties regarding whether the Goldin defendants were required to provide unredacted bills to USLIC.

USLIC filed this lawsuit against the Goldin defendants, seeking a declaratory judgment that USLIC has no duty to defend or indemnify the Goldin defendants. USLIC has filed the present Motion for Partial Summary Judgment on its prospective duty to defend only. The Goldin defendants argues that USLIC has a duty to defend because the Amended Complaint includes a claim of negligence. Goldin also argues that USLIC should be estopped from withdrawing its defense of the Goldin defendants as a result of USLIC's bad faith in handling the claim. In the alternative, the Goldin defendants seek time to conduct additional discovery on these issues pursuant to Rule

56(d).

## DISCUSSION

Any party to a civil action may move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. Fed. R. Civ. P. 56. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

The parties agree that this Court should apply Mississippi law when deciding whether USLIC has a duty to defend the Goldin defendants. "Generally, '[t]he obligation of the insurer to defend is to be determined by analyzing the allegations of the complaint or declaration in the underlying action.'" *Architex Ass'n v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1156 n.14 (Miss. 2010) (quoting *United States Fid. & Guar. Co. v. Omnibank*, 812 So. 2d 196, 200 (Miss. 2002)). However, even where the allegations in the complaint do not fall within coverage, an insurer has a duty to defend a claim if the

insurer has knowledge of facts that would trigger coverage or could discover such facts by conducting a reasonable investigation. *See Architex*, 27 So. 3d at 1156 n. 14 (citing *Mavar Shrimp & Oyster Co. v. U.S. Fid. & Guar. Co.*, 187 So. 2d 871, 875 (Miss. 1966)); *Merchs. Co. v. Am. Motorists Ins. Co.*, 794 F. Supp. 611, 617 (S.D. Miss. 1992). "[T]he duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." *Titan Indem. Co. v. Pope*, 876 So. 2d 1096, 1100 (Miss. Ct. App. 2004) (quoting *Merchs. Co.*, 794 F. Supp. at 617).

The Mississippi Court of Appeals has explained the proper procedure for interpreting insurance policies:

> The interpretation of insurance policy language presents a question of law . . . . We read the policy as a whole, considering all the relevant portions together and, whenever possible, should give operable effect to every provision in order to reach a reasonable overall result. The policy is construed most strongly against the insurer as the drafter of the policy. Like other contracts, when an insurance contract is plain and unambiguous, it will be enforced as written. Ambiguity is present when policy language is susceptible to two or more reasonable interpretations. In the case of ambiguity, this Court will apply interpretation favoring the insured, and will determine the intent of the parties to the insurance contract with reference to what a reasonable person in the insured's position would have understood the terms to mean. When interpreting ambiguous policy language, we will give the words their plain, ordinary, and popular meaning, not a philosophical or scientific meaning. When there is no practical difficulty in making the language of an insured contract free from doubt, any doubtful provision in the policy should be construed against the insurer. Nonetheless, where the policy is free from ambiguity, this Court will not adopt a strained interpretation of the policy for the purpose of preventing hardship to the insured.

*Progressive Gulf Ins. Co. v. We Care Day Care Ctr., Inc.*, 953 So. 2d 250, 253-54 (¶11)

((Miss. Ct. App. 2006) (internal quotations and citations omitted). Furthermore, policy exclusions "must be written in clear and unmistakable language" and are strictly construed. *Progressive Gulf*, 953 So. 2d at 254 (¶12).

In the present case, USLIC argues that it is entitled to partial summary judgment with regard to its prospective duty to defend, because two exclusions in the policy bar coverage for NCI's claims against the Goldin defendants. The USLIC policy provides:

> I. Insuring Agreement
> A. The Company will pay on behalf of the Insured Loss in excess of the Retention not exceeding the Limit of Liability for which this coverage applies that the Insured shall become legally obligated to pay because of Claims first made against the Insured during the Policy Period, or during the Extension Period, if applicable, for Wrongful Acts arising solely out of an Insured's duties on behalf of the Organization.
> B. The Company has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false or fraudulent . . . .

(Ex. 2 to Pl.'s Mot. at 1.)  The policy defines the term "Wrongful Act" as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties: (1) by the Organization or by the Individual Insureds arising solely from their capacity with the Organization; or (2) asserted against the Individual Insureds because of their status as such." (*Id.* at 3).  The exclusions at issue provide:

> The Company shall not be liable to make payment for Loss in connection with any Claim made against any Insured arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:
> . . . .
>
> B. brought about or contributed to **in fact** by any dishonest, fraudulent or criminal Wrongful Act or by any Wrongful Act committed with intent to cause damage;

> C. any of the Insureds gaining **in fact** any profit, benefit, remuneration or advantage to which such Insured was not legally entitled . . . .

(*Id.*) (emphasis added).

USLIC argues that all of the factual allegations made in the NCI Amended Complaint describe illegal and intentional conduct on the part of the insured and therefore the exclusions bar coverage.  In support of its arguments, USLIC relies on cases that construe occurrence policies rather than claims-made policies, and it has not provided any case authority that analyzes or interprets the exclusions at issue.  Furthermore, the Court has found no case law that interprets the exclusions in the context presented here.[2]

The Court is required, pursuant to Mississippi law, to strictly construe the exclusions at issue.  *Progressive Gulf*, 953 So. 2d at 254 (¶12).  The phrase "in fact" is included in both exclusions relied on by USLIC.  "In fact" is defined in *Black's Law Dictionary* as "actual or real; resulting from the acts of parties rather than by operation of law." *Black's Law Dictionary* (9th ed. 2009).  Similarly, *Merriam-Webster Dictionary* defines the word "fact" as "a thing done" or "the quality of being actual" or "an actual occurrence."  USLIC has not provided any authority or argument to the Court concerning whether the exclusions at issue require a determination that the insured actually committed a fraudulent, dishonest, or criminal act, a determination that the

---

[2] The Court notes that the occurrence case law is not instructive in the present case, since it places more importance on whether the insured's conduct was intentional, while the fraud and intentional acts exclusion at issue in the present case focuses on whether the harm was intentional. *See United States Fid. & Guar. Co. v. Omnibank*, 812 So. 2d 196, 201 (¶¶19-20) (Miss. 2002).

insured actually acted with intent to cause harm to another, or a determination that the insured actually received a benefit to which it was not legally entitled. Furthermore, it is unclear whether a final adjudication would be required or whether allegations in a complaint are sufficient to exclude coverage, and no final adjudication has been made in the NCI lawsuit. Thus, USLIC has not demonstrated that there is no potential basis for coverage under the policy as a matter of law.

## Conclusion

Under Mississippi law the Court must strictly construe the policy and interpret ambiguity in favor of the insured. In the opinion of the Court USLIC has not demonstrated that it is entitled to summary judgment regarding its duty to defend. As a result, it is not necessary for the Court to reach the parties' arguments regarding estoppel or the Goldin defendants' Motion for Rule 56(d) Relief.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Partial Summary Judgment on Duty to Defend [35] filed by United States Liability Insurance Company is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion for Rule 56(d) Relief [63] filed by Goldin Metals, Inc., Goldin Inc., Goldin Industries, Inc., Jack Goldin, Martin Goldin, Alan H. Goldin, and Steven L. Goldin is **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED** this the 30th day of November, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE